**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-12-01927-PHX-NVW |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Debra Ann Nickolas, et al., | |
| Defendants. | |

Before the Court are Defendants' Motions for a new trial (Doc. 530, 535, 543) and the Government's Response (Doc. 564). The Motions will be denied.

**I.    BACKGROUND**

On October 8, 2014, a jury convicted all Defendants of one count of conspiracy and 12 counts of money laundering. In addition, Defendants Brewer, Cutulle and Kirby were convicted of an additional nine money laundering counts and six counts of wire fraud. Doc. 506. Later that day, before learning of the verdict, an alternate juror who had been excused at the close of the argument contacted the Court to express concern about the conduct of Juror #7 during the course of Defendants' four-week trial. According to the alternate, Juror #7 had on multiple occasions spoken with other jurors about the case, in disregard of the Court's admonishment to refrain from discussing the evidence until deliberations began. When Juror #7 once again began talking about the case on October 7, 2014, the alternate allegedly told him that "this is not up for discussion." Doc. 512 at 1. In addition, the alternate reported that during breaks in the trial, Juror #7 had played

1  the "Law & Order" theme song on his cell phone, eliciting laughter from several other
2  jurors. This conduct convinced the alternate that Juror #7 "already ha[d] a predetermined
3  mind set" when the case was submitted to the jury. *Id.*

4  The Court informed counsel of the alternate's allegations in a Sealed
5  Memorandum (Doc. 512) dated October 10, 2014. Two weeks later, Defendants filed the
6  instant Motions, seeking a new trial or, in the alternative, an evidentiary hearing at which
7  the parties could question the alternate about Juror #7's conduct. The Court granted the
8  latter request on December 2, 2014, and set an evidentiary hearing for December 16,
9  2014. Consistent with Federal Rule of Evidence 606(b) and the relevant case law, the
10 Court ordered that the parties could inquire only into the content of Juror #7's
11 statements—not the effect of those statements on deliberations or the jury's vote.

12 At the hearing, the alternate testified to two comments he remembered Juror #7
13 making. The first came sometime toward the middle or end of trial, when Juror #7
14 remarked on witness Toni Graham's difficulty in testifying. According to the alternate,
15 Juror #7 told two other jurors that he found Graham—who had to leave the stand twice
16 because she was in severe physical pain—to be "incoherent" and questioned the
17 reliability of her testimony. The alternate described this comment as "flippant" and "off
18 the cuff," but he could not say whether it was slanted against the Government or
19 Defendants.

20 The second incident occurred during a break in trial, as the alternate and several
21 other jurors were walking out of the courthouse to buy lunch. Juror #7, talking with two
22 fellow jurors, made a "snide" comment about testimony from government witness Steven
23 Tacey. Although he does not remember exactly what Juror #7 said, the alternate believes
24 it may have pertained to defense counsel's performance during cross-examination of
25 Tacey. Whatever Juror #7 said, it produced little reaction from the other jurors. The
26 alternate testified that this comment, like the first, was brief and did not amount to a "full-
27 blown conversation."
28

On roughly two to four occasions, Juror #7 also played the theme song from "Law & Order" on his cell phone while in the jury room. The alternate testified that he was unsure what prompted Juror #7 to pull up the theme song; regardless, other jurors who were within earshot "snicker[ed]" but did not say anything in response. The alternate told Juror #7 he found Juror #7's conduct "inappropriate," but the music continued. Under questioning from counsel, the alternate clarified that his previous description to the Court of Juror #7's "predetermined mind set" had been imprecise. Rather than heading into deliberations with a firm view of Defendants' guilt or innocence, the alternate testified, Juror #7 failed to treat the case with appropriate seriousness.

## II.   ANALYSIS

"The Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors. The bias . . . of even a single juror would violate [Defendant's] right to a fair trial." *Estrada v. Scribner*, 512 F.3d 1227, 1239-40 (9th Cir. 2008) (alterations in original) (citations and internal quotation marks omitted). "Accordingly, the presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000) (citations and internal quotation marks omitted). "A juror is considered to be impartial only if he can lay aside his opinion and render a verdict based on the evidence presented in court. Doubts regarding bias must be resolved against the juror." *Id.* at 1114 (ellipsis, citations and internal quotation marks omitted).

When considering new trial motions based on alleged juror misconduct during voir dire, trial and deliberations, the Ninth Circuit has "analyzed juror bias under two theories—actual bias and implied bias." *See Estrada*, 512 F.3d at 1240 (citation omitted). "Actual bias is, in essence, 'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality. … The determination of whether a juror is actually biased is a question of fact." *See id.* (citations and some internal quotation marks omitted). "Additionally, in extraordinary

1  cases, courts may presume bias based on the circumstances." *Id.* (citation and internal
2  quotation marks omitted).  Without expressly excluding other possible scenarios, the
3  Ninth Circuit has "indicated four instructive fact situations where juror bias might be
4  implied": "(1) where the juror is apprised of such prejudicial information about the
5  defendant that the court deems it highly unlikely that he can exercise independent
6  judgment even if the juror states he will, (2) the existence of certain relationships
7  between the juror and the defendant, (3) where a juror or his close relatives have been
8  personally involved in a situation involving a similar fact pattern, and (4) where it is
9  revealed that the juror is an actual employee of the prosecuting agency, that the juror is a
10 close relative of one of the participants in the trial or that the juror was a witness or
11 somehow involved in the underlying transaction." *Id.* (citation omitted).

12       Defendants argue the Court should find Juror #7 was biased on the basis of his
13 interactions with fellow jurors during trial.  The Ninth Circuit confronted a similar set of
14 facts in *United States v. Klee*, 494 F.2d 394 (9th Cir. 1974).  There, a defendant moving
15 for a new trial "presented an affidavit of one of the jurors which sa[id] that eleven of the
16 fourteen jurors (including alternates) discussed the case during recesses and that nine of
17 the jurors expressed premature opinions about [the defendant's] guilt." 494 F.2d at 395.
18 In affirming the trial judge's decision not to hold an evidentiary hearing or order a new
19 trial, the court commented that the "important thing is not that jurors keep silent with
20 each other about the case but that each juror keep an open mind until the case has been
21 submitted to the jury." *See id.* at 396.  The Ninth Circuit observed that the juror's
22 affidavit did "not assert that any of the jurors relied upon any evidence outside of the
23 record in reaching their verdict, nor d[id] it assert that any of the jurors actually decided
24 upon the defendant's guilt before the case was submitted to them." *Id.*  As a result, the
25 trial court did not err in concluding that the misconduct had not "prejudiced the defendant
26 to the extent that he has not received a fair trial." *See id.*

27       In this case, as in *Klee*, there is no testimony before the Court that the jury relied
28 on evidence outside the record in reaching its verdict or that Juror #7 had made up his

1    mind before the close of the evidence.  Indeed, the alternate expressly stated that he did
2    not believe Juror #7 had prejudged the evidence.  If true, the rest of the alternate's
3    testimony establishes that Juror #7 violated the Court's instruction—articulated clearly at
4    the beginning of trial and repeated by reference throughout the proceedings—not to
5    discuss the case before the start of deliberations.  The jury's failure to heed this
6    admonition "is not a light matter."  *United States v. Gianakos*, 415 F.3d 912, 921 (8th
7    Cir. 2005).  But it also does not establish the "actual bias" that "leads to an inference that
8    the person will not act with entire impartiality."  *Estrada*, 512 F.3d at 1240 (citation and
9    internal quotation marks omitted).  Nor is any of the four breeds of "implied bias" present
10   in this case.  *See id.*

11         The practical realities of a four-week trial require recognition that intra-jury
12   conversations about the case, while regrettable, are probably neither entirely avoidable
13   nor inherently prejudicial to a defendant's right to a fair trial.  *See Klee*, 494 F.2d at 396
14   ("No normal honest Americans ever worked together in a common inquiry for any length
15   of time with their mouths sealed up like automatons or oysters." (citation and internal
16   quotation marks omitted)).  Mere discussion among jurors before submission of the case
17   does not prove those jurors are biased; at most, it proves they suffer from a natural human
18   temptation to process with others the information they have spent weeks absorbing.
19   Here, Juror #7 did nothing more than remark, perhaps derogatorily, on the testimony of
20   two out of the dozens of witnesses who appeared in the course of a four-week-long trial.
21   The remarks were brief and did not lead to discussion.  Absent some indication that it
22   sealed off jurors' minds to the evidence and arguments presented by Defendants' counsel,
23   such discussion does not support the conclusion that any jurors were biased against
24   Defendants.

25         At least one other court of appeals has ruled that a district court erred by refusing
26   to order a new trial after being informed during trial that "members of the jury had been
27   discussing the case during their recesses and while waiting in the jury room."  *United*
28   *States v. Resko*, 3 F.3d 684, 687 (3d Cir. 1993).  In response to these allegations, the trial

1  judge in *Resko* required each sitting juror to fill out a written questionnaire asking
2  whether he had discussed the facts of the case with other jurors during trial and, if so,
3  whether he had formed an opinion about the defendant's guilt as a result. *Id.* at 688. "All
4  twelve jurors answered 'yes' to the first question and 'no' to the second question.
5  Defendants again moved the court for further inquiry or the grant of a mistrial, but their
6  motion was denied. The trial then resumed, and the jury convicted both [defendants] on
7  counts one and nine." *Id.*  On appeal, the Third Circuit did not assume the existence of
8  prejudice, but it nevertheless remanded for a new trial, finding that "the district court
9  erred by declining to engage in further inquiry—such as individualized voir dire—upon
10 which it could have determined whether the jurors had maintained open minds." *Id.* at
11 691, 695.

12 At oral argument on November 26, 2014, Defendants argued that the logic of
13 *Resko* entitles them to a new trial. Central to the holding in *Resko*, however, was the
14 Third Circuit's conclusion that "neither [it] nor the trial court ha[d] any means to evaluate
15 the possible prejudicial effect of the premature deliberations since [it was] unaware of the
16 substance or the frequency of the discussions." *Id.* at 693.  Here, by contrast, the
17 alternate testified that Juror #7 made two brief, passing remarks about the evidence,
18 neither of which appeared to move his fellow jurors very much. The alternate made clear
19 that, in his view, Juror #7 had not failed to keep an open mind. This information gives
20 the Court a sufficient basis to determine that Juror #7 was not biased against Defendants.
21 In addition, the "further inquiry" the Third Circuit envisioned in *Resko* would have come
22 during, rather than after, trial. As a result, questions about "whether the jurors had
23 maintained open minds" might not have been barred by Rule 606(b), which prohibits a
24 juror, during "an inquiry into the validity of a verdict or indictment," from testifying
25 "about any statement made or incident that occurred during the jury's deliberations; the
26 effect of anything on that juror's or another juror's vote; or any juror's mental processes
27 concerning the verdict or indictment." Fed. R. Evid. 606(b). But such inquiry post-
28 verdict would be barred in this case. Finally, *Klee* remains the law in this circuit.

Having considered the alternate's testimony, the Court finds neither Juror #7 nor any other juror was unable to "lay aside his opinion and render a verdict based on the evidence presented in court." *Gonzalez*, 214 F.3d at 1114 (citation and internal quotation marks omitted). Accordingly, the evidence before the Court does not warrant the conclusion that Defendants' right to a fair trial was prejudiced.

IT IS THEREFORE ORDERED that Defendants' Motions for a new trial (Doc. 530, 535, 543) are denied.

Dated this 19th day of December, 2014.

Neil V. Wake
United States District Judge